

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION


ALPEREN YAGCI and ANNGI LORENA BOLANOS QUINONEZ, Plaintiffs,

v. Civil Action No. _____

CIGNA HEALTH AND LIFE INSURANCE COMPANY

900 Cottage Grove Road, Bloomfield, CT 06002

JPMORGAN CHASE & CO.

270 Park Avenue, New York, NY 10017,

Defendants.

COMPLAINT

I. INTRODUCTION AND NATURE OF THE ACTION

1. This is an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

2. Plaintiffs seek to recover and enforce their rights to health care spending account benefits under an employee welfare benefit plan sponsored by Defendant JPMorgan Chase & Co. and administered in part by Defendant Cigna Health and Life Insurance Company.

3. Plaintiff Alperen Yagci participated in a Health Care Spending Account ("HCSA") plan through his employment with JPMorgan Chase & Co. ("JPMorgan"). By July 2023, his HCSA account contained a balance of approximately $2,617.59 funded by pre-tax payroll contributions, as shown in the HCSA portal records and pay stubs (Exhibits C and H).

4. The applicable plan documents provided that participants could incur eligible medical expenses through the end of the month of termination and could submit claims for reimbursement until March 31 of the following year (Exhibit D). Plaintiffs did exactly that: they incurred eligible expenses by the deadline and attempted to submit claims well within the time allowed.

5. Defendants first acknowledged the existence of Plaintiffs' HCSA account and remaining balance, then blocked access to the account, denied claims without a valid reason, and ultimately issued a written statement falsely asserting that Plaintiffs had no such account at all (Exhibits A and B).

6. Plaintiffs seek: (a) benefits due under ERISA § 502(a)(1)(B); and (b) appropriate equitable relief for Defendants' breaches of fiduciary duty under ERISA § 502(a)(3), including restitution and injunctive and declaratory relief.

II. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA, including 29 U.S.C. § 1132 (ERISA § 502).

8. This Court has jurisdiction over Plaintiffs' claims to recover benefits, enforce rights, and clarify rights under the terms of an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and § 1132(e)(1).

9. This Court also has jurisdiction over Plaintiffs' claims for appropriate equitable relief for violations of ERISA and breaches of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3).

10. Venue is proper in this District under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) because:

a. Plaintiff Alperen Yagci resides in Princeton, Texas, within the Eastern District of Texas;

b. A substantial part of the events or omissions giving rise to these claims occurred in this District, including Plaintiffs' incurring of medical expenses, receipt of plan-related communications, and denial of access to plan benefits; and

c. Upon information and belief, Defendants transact business in this District and the ERISA plan at issue was administered, in part, with respect to participants residing in this District.

III. PARTIES

11. Plaintiff ALPEREN YAGCI is an adult individual residing at 1706 Albatross Rd, Princeton, Texas 75407. At all relevant times, he was an employee of Defendant JPMorgan Chase & Co. and a participant in its Health Care Spending Account plan within the meaning of 29 U.S.C. § 1002(7).

12. Plaintiff ANNGI LORENA BOLANOS QUINONEZ is an adult individual residing with Plaintiff Yagci in Princeton, Texas. She was an eligible dependent of Plaintiff Yagci under the HCSA plan and incurred eligible medical expenses for which reimbursement was available under the plan.

13. Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY ("Cigna") is a corporation organized under the laws of the State of Connecticut with its principal place of business at 900 Cottage Grove Road, Bloomfield, Connecticut 06002. At all times relevant, Cigna was engaged in the business of administering employee benefits, including serving as claims administrator for the JPMorgan HCSA plan, and exercised discretionary authority and control over the administration of claims and payment of benefits, thereby acting as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

14. Defendant JPMORGAN CHASE & CO. ("JPMorgan") is a Delaware corporation with its principal place of business at 270 Park Avenue, New York, New York 10017. At all times relevant, JPMorgan was Plaintiff Yagci's employer, sponsored the HCSA plan, and acted as plan administrator and fiduciary with respect to the plan within the meaning of 29 U.S.C. § 1002(16) and § 1002(21)(A).

15. JPMORGAN CHASE & CO. HEALTH CARE SPENDING ACCOUNT PLAN (the "Plan") is, upon information and belief, an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), established and maintained by JPMorgan for the purpose of providing medical expense reimbursement benefits to eligible employees and their dependents. The exact formal name of the Plan is unknown to Plaintiffs at this time; Plaintiffs will amend this pleading if necessary once the formal Plan name is confirmed. The Plan is described here for context only and is not named as a defendant in this action.

IV. FACTUAL ALLEGATIONS

A. Employment and HCSA Participation

16. Plaintiff Yagci was employed by JPMorgan from on Dec 17, 2018 until his termination on July 9, 2023, as confirmed by JPMorgan's employment verification records.

17. Plaintiff Yagci was employed by JPMorgan from December 17, 2018 until his termination on July 9, 2023, as confirmed by JPMorgan's employment verification records (Exhibit E).

18. During his employment, Plaintiff Yagci elected to participate in the JPMorgan Health Care Spending Account ("HCSA") plan, an ERISA-governed health care flexible spending account ("health FSA") that allowed employees to make pre-tax contributions to pay for qualified medical expenses.

19. Through payroll deductions, Plaintiff Yagci made regular pre-tax contributions to his HCSA throughout 2023 (Exhibit G). By the time of his termination in July 2023, his HCSA account reflected a remaining balance of approximately $2,617.59, as shown in the portal records (Exhibit C).

20. Plaintiffs reasonably believed, and were expressly told through JPMorgan's benefit materials, that HCSA funds were available to reimburse eligible medical expenses incurred during the coverage period, subject only to the Plan's stated deadlines.

B. Plan Rules and Eligibility Period

21. The Plan was governed by written plan documents, including a Summary Plan Description and a document titled "As You Leave" guide provided by JPMorgan to separating employees.

22. The Plan was governed by written plan documents, including a Summary Plan Description and a document titled "As You Leave" guide provided by JPMorgan to separating employees (Exhibit D).

a. Participants could incur eligible HCSA expenses through the last day of the month in which employment terminated (for Plaintiff Yagci, through July 31, 2023);

b. Participants had until March 31 of the following year (for 2023 expenses, until March 31, 2024) to submit claims for reimbursement of those eligible expenses; and

c. Cigna was designated as the claims administrator for processing HCSA claims.

23. According to page 17 of the "As You Leave" guide and related Plan materials (Exhibit D):

a. Use the full HCSA balance ($2,617.59) toward eligible medical expenses incurred through July 31, 2023; and

b. Submit claims for reimbursement of such expenses at any time up to March 31, 2024.

24. Plaintiffs relied on these written Plan terms in planning and paying for medical care during and immediately after Plaintiff Yagci's employment.

C. Defendants' Acknowledgment of the Account

25. Throughout 2023, Cigna's online portal displayed Plaintiffs' HCSA account, including:

a. A current available balance of approximately $2,617.59;

b. A transaction history showing pre-tax contributions from Plaintiff Yagci's wages; and

c. Prior approved reimbursements and debits.

26. Throughout 2023, Cigna's online portal displayed Plaintiffs' HCSA account, as shown in the HCSA portal screenshots (Exhibit C), including:

a. Explicitly acknowledged Plaintiffs' HCSA account;

b. Confirmed that the account had a remaining balance;

c. Reminded Plaintiffs of the upcoming March 31, 2024 deadline to submit claims; and

d. Urged Plaintiffs to submit eligible expenses before that deadline.

27. In or about January 2024, Cigna sent Plaintiffs a written notice entitled "TAKE ACTION NOW" (Exhibit A), which:

D. Denial of Access and Benefits

28. Immediately following Plaintiff Yagci's termination on or about July 9, 2023, the HCSA debit card that had functioned during his employment was declined when Plaintiffs

attempted to use it for eligible medical expenses, effectively cutting off direct access to HCSA funds.

29. After termination, Plaintiffs were unable to access or use their HCSA funds to pay for eligible medical expenses incurred through July 31, 2023, despite the Plan's written terms allowing such use.

30. The HCSA section of Cigna's online portal initially became inaccessible or ceased displaying Plaintiffs' HCSA account information, preventing Plaintiffs from viewing their balance, submitting claims online, or tracking reimbursement status.

31. Plaintiffs contacted Cigna customer service by telephone multiple times to ask why they could not access their HCSA account and funds. Cigna representatives gave inconsistent and confusing explanations, including statements that they could not locate an HCSA account for Plaintiffs or that Plaintiffs were no longer entitled to use such an account after termination.

32. Only after Plaintiffs repeatedly questioned Cigna about the account did the HCSA information reappear on the online portal, at which point Plaintiffs captured screenshots showing the active account and remaining balance. Even then, however, Defendants did not restore meaningful access to the funds or process valid claims for reimbursement.

33. Plaintiffs nevertheless attempted to submit claims for eligible medical expenses incurred on or before July 31, 2023, within the time period allowed by the Plan's run-out rules.

34. Plaintiffs nevertheless attempted to submit claims for eligible medical expenses incurred on or before July 31, 2023, within the time period allowed by the Plan's run-out rules, as reflected in the claim submission and denial screenshots (Exhibit C).

35. Defendants did not provide Plaintiffs with a clear, ERISA-compliant written explanation of the reasons for the claim denials or a meaningful opportunity to pursue an appeal that acknowledged the existence of the HCSA account.

E. Fraudulent "No Account" Denial

36. Defendants did not provide Plaintiffs with a clear, ERISA-compliant written explanation of the reasons for the claim denials or a meaningful opportunity to pursue an appeal that acknowledged the existence of the HCSA account. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.

"According to our records, you do NOT have a Health Reimbursement Arrangement, Health Savings Account, Flexible Spending Account, or Dependent Care Account."

37. On or about February 8, 2024, Cigna issued a written letter to Plaintiffs (Exhibit B) stating, in substance, that:

a. Cigna had already sent the January 2024 "TAKE ACTION NOW" letter explicitly acknowledging the HCSA account and remaining balance;

b. Cigna's own records had previously reflected a $2,617.59 HCSA balance and corresponding transaction history;

c. JPMorgan's employment and benefit records confirmed Plaintiff Yagci's HCSA participation and payroll contributions; and

d. Plaintiffs possessed screenshots of Cigna's portal showing an active HCSA account in 2023 and thereafter.

38. Defendants knew, or at a minimum recklessly disregarded the fact, that the February 8, 2024 statement was false because they had actual possession and control of the relevant Plan and account records.

39. By falsely asserting that no account existed, Defendants sought to cut off Plaintiffs' ability to submit claims and to avoid paying out any remaining HCSA funds.

F. Financial Harm to Plaintiffs

40. As a direct and proximate result of Defendants' actions, Plaintiffs suffered significant financial harm.

41. Defendants withheld and effectively confiscated HCSA funds in the amount of approximately $2,617.59 that had been contributed on a pre-tax basis from Plaintiff Yagci's wages and were intended exclusively to cover Plaintiffs' medical expenses.

42. Because Defendants refused to provide access to HCSA funds or reimburse valid claims, Plaintiffs were forced to pay medical expenses out-of-pocket during a period of unemployment and financial vulnerability.

43. Plaintiffs incurred at least approximately $3,200.00 in eligible medical expenses that should have been reimbursed partially from the HCSA, including, among other things:

a. Psychiatric and mental health treatment; and

b. Other necessary medical services and prescriptions for Plaintiffs and/or Plaintiff Bolanos Quinonez.

G. Defendants' Bad Faith and Intent

44. Plaintiffs incurred at least approximately $3,200.00 in eligible medical expenses that should have been reimbursed partially from the HCSA, including, among other things (Exhibit F):

45. Defendants:

a. Acknowledged the HCSA account and remaining balance in January 2024;

b. Then, only weeks later, issued a denial letter flatly stating Plaintiffs "do NOT" have any such account, contrary to their own records;

c. Declined Plaintiffs' HCSA debit card attempts immediately after termination when the Plan's written terms still allowed use of the HCSA for eligible expenses incurred through the end of July 2023;

d. Provided inconsistent and inaccurate explanations over the telephone when Plaintiffs called to ask about their account and claims; and

e. Failed to meaningfully investigate or correct their misrepresentations when confronted with the January 2024 acknowledgment, the Plan documents, and the later portal screenshots.

46. Defendants' actions appear designed to cause Plaintiffs to forfeit their HCSA funds through confusion, delay, and misrepresentation rather than through any lawful forfeiture mechanism set forth in the Plan. In addition, the sequence of card declines, portal inaccessibility, contradictory communications, and false written denial reflects a systemic breakdown in Plan administration that JPMorgan, as Plan sponsor and administrator, had a fiduciary duty to monitor, identify, and correct. confusion, delay, and misrepresentation rather than through any lawful forfeiture mechanism set forth in the Plan.

47. Defendants' actions had the foreseeable effect of causing Plaintiffs to lose access to HCSA funds during the run-out period and to risk forfeiture at the close of that period, through confusion, delay, and misrepresentation rather than through any lawful forfeiture mechanism set forth in the Plan. In addition, the sequence of card declines, portal inaccessibility, contradictory communications, and false written denial reflects a systemic breakdown in Plan administration that JPMorgan, as Plan sponsor and administrator, had a fiduciary duty to monitor, identify, and correct.

H. Exhaustion of Administrative Remedies and Futility

48. To the extent the Plan contained internal claim and appeal procedures applicable to HCSA claims, Plaintiffs made reasonable and good-faith efforts to pursue those procedures by:

a. Submitting timely claims for reimbursement of eligible expenses incurred on or before July 31, 2023; and

b. Attempting to use the channels available to them, including the online portal and repeated calls to Cigna customer service, to obtain reimbursement and information about their HCSA account.

49. Defendants' conduct, including making the HCSA portal unavailable for a period of time, declining HCSA debit card transactions, giving inconsistent explanations about the existence of the account over the phone, and then issuing the February 8, 2024 letter falsely stating

that no HCSA account existed, rendered any further administrative remedies effectively unavailable and/or futile.

50. When a plan administrator fails to establish or follow reasonable claims procedures or refuses to acknowledge the existence of the account necessary to process a claim, a participant is deemed to have exhausted administrative remedies and may proceed directly to court.

51. When a plan administrator fails to establish or follow reasonable claims procedures or refuses to acknowledge the existence of the account necessary to process a claim, a participant is deemed to have exhausted administrative remedies and may proceed directly to court. See 29 C.F.R. § 2560.503-1(l); 29 U.S.C. § 1133.

a. Exhausted all administrative remedies reasonably available under the circumstances; or

b. Are excused from any further exhaustion requirement and deemed to have exhausted administrative remedies because Defendants failed to establish or follow ERISA-compliant claims and appeal procedures and falsely denied the very existence of the HCSA account.

52. To the extent that exhaustion of administrative remedies is required for claims under 29 U.S.C. § 1132(a)(1)(B), Plaintiffs invoke the doctrines of futility and deemed exhaustion. To the extent Plaintiffs assert statutory breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(3), Plaintiffs contend that such claims are not subject to the same exhaustion requirement, or in the alternative are excused for the same reasons.

V. CAUSES OF ACTION

COUNT I – ERISA § 502(a)(1)(B): WRONGFUL DENIAL OF BENEFITS (29 U.S.C. § 1132(a)(1)(B)) (Against All Defendants)

53. Plaintiffs reallege and incorporate by reference paragraphs 1–52 as if fully set forth herein.

54. The Plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), established and maintained by JPMorgan for its employees and their eligible dependents to provide health care spending account benefits.

55. At all times relevant, Plaintiffs were participants and beneficiaries of the Plan within the meaning of 29 U.S.C. § 1002(7).

56. Under the Plan's terms, as reflected in the Summary Plan Description and the "As You Leave" guide (Exhibit D):

a. Plaintiff Yagci was entitled to incur eligible HCSA expenses through July 31, 2023; and

b. Plaintiffs were entitled to submit claims for reimbursement of such expenses up to March 31, 2024.

57. Plaintiffs incurred eligible medical expenses on or before July 31, 2023 and submitted claims for reimbursement within the Plan's run-out period (Exhibits D and G).

58. At the time of these expenses and claim submissions, Plaintiffs' HCSA account held a remaining balance of approximately $2,617.59, which was available to reimburse these expenses under the Plan (Exhibits C and H).

59. Defendants wrongfully failed and refused to pay benefits due under the Plan by:

a. Restricting Plaintiffs' practical ability to access and use the HCSA funds in a manner inconsistent with the Plan's written terms;

b. Failing to process and pay valid claims for eligible medical expenses incurred on or before July 31, 2023; and

c. Issuing a written denial falsely asserting that no HCSA account existed (Exhibit B).

60. Defendants' actions constitute a denial of benefits due and a failure to provide a full and fair review under the Plan within the meaning of 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1133. Because Defendants failed to comply with ERISA's claims-procedure requirements, any asserted discretionary deference should not apply, and the Court should review the denial de novo. See 29 C.F.R. § 2560.503-1.

61. As a direct and proximate result of Defendants' wrongful denial, Plaintiffs have suffered the loss of HCSA benefits totaling at least $2,617.59.

62. Plaintiffs are entitled to recover, under 29 U.S.C. § 1132(a)(1)(B):

a. Benefits due to them under the terms of the Plan, specifically at least $2,617.59 in HCSA funds;

b. Clarification and enforcement of their rights under the Plan; and

c. Pre-judgment and post-judgment interest on all wrongfully withheld benefit amounts.

COUNT II – ERISA § 502(a)(3): BREACH OF FIDUCIARY DUTY / APPROPRIATE EQUITABLE RELIEF (29 U.S.C. § 1132(a)(3)) (Against Cigna and JPMorgan)

63. Plaintiffs reallege and incorporate by reference paragraphs 1–62 as if fully set forth herein.

64. At all relevant times, Cigna and JPMorgan were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or discretionary control over the administration, management, and/or disposition of Plan assets and benefits.

65. As fiduciaries, Cigna and JPMorgan owed Plaintiffs duties of loyalty and prudence under 29 U.S.C. § 1104(a), including the duty to:

a. Act solely in the interest of Plan participants and beneficiaries;

b. Discharge their duties with the care, skill, prudence, and diligence of a prudent person acting in a like capacity; and

c. Provide accurate, complete, and non-misleading information about Plan benefits and account status.

66. Cigna breached its fiduciary duties by, among other things:

a. Misrepresenting or concealing the existence and status of Plaintiffs' HCSA account;

b. Issuing the February 8, 2024 letter (Exhibit B) falsely stating that Plaintiffs had no HCSA, FSA, HRA, HSA, or similar account;

c. Failing to maintain accurate records and reasonable claims procedures; and

d. Failing to conduct a good-faith investigation and fair review of Plaintiffs' claims in light of the January 2024 acknowledgment, the Plan terms, and the portal screenshots showing the account and balance.

67. JPMorgan breached its fiduciary duties by, among other things:

a. Failing to properly monitor Cigna's administration of the Plan;

b. Failing to investigate and correct Cigna's improper claim denials and misrepresentations;

c. Failing to ensure that Plaintiffs could exercise their rights to benefits through July 31, 2023 and to submit claims through March 31, 2024; and

d. Failing to properly communicate, enforce, and oversee Plan terms and procedures relating to post-termination HCSA rights.

68. These fiduciary breaches caused Plaintiffs economic losses, including the loss of Plan benefits and the need to pay medical expenses out-of-pocket, as well as other consequential harms.

69. To the extent that the relief available under 29 U.S.C. § 1132(a)(1)(B) is inadequate to fully remedy the harm caused by these fiduciary breaches and statutory violations, Plaintiffs seek "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3), including but not limited to:

a. Restitution or equitable disgorgement of all HCSA funds, including at least $2,617.59 in identifiable pre-tax contributions, and any profits Defendants obtained by retaining Plaintiffs' contributions;

b. An equitable surcharge against the fiduciaries in an amount sufficient to make Plaintiffs whole for losses caused by the breaches, to the extent such surcharge is recognized as an equitable remedy;

c. Reformation or clarification of Plan language, as necessary, to accurately reflect post-termination rights and ensure that the Plan is administered in conformity with its written terms;

d. Injunctive relief requiring Defendants to:

i. Restore or accurately account for Plaintiffs' HCSA recordkeeping and balances;

ii. Implement and maintain ERISA-compliant claims and appeal procedures; and

iii. Cease misrepresenting Plan rights and account existence to participants; and

e. Declaratory relief that Defendants violated their fiduciary obligations under ERISA and that their practices are unlawful.

70. Plaintiffs seek this equitable relief in addition to, and not merely duplicative of, the benefits sought under 29 U.S.C. § 1132(a)(1)(B), to the extent the Court determines such distinct equitable relief is appropriate and necessary to fully remedy Defendants' violations and protect participants and beneficiaries going forward.

71. Count II is pled in the alternative, and to the extent the Court determines that relief under 29 U.S.C. § 1132(a)(1)(B) does not fully address Defendants' fiduciary breaches or that equitable remedies are otherwise appropriate.

VI. DAMAGES

72. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages and are entitled to relief as follows.

A. Remedies Under ERISA § 502(a)(1)(B)

73. Under 29 U.S.C. § 1132(a)(1)(B), Plaintiffs seek:

a. Payment of all benefits due under the terms of the Plan, including at least $2,617.59 in HCSA funds that were available and should have been used to reimburse Plaintiffs' eligible medical expenses;

b. Clarification and enforcement of their rights to benefits under the Plan; and

c. Pre-judgment and post-judgment interest on all wrongfully withheld benefits.

B. Equitable Relief Under ERISA § 502(a)(3)

74. Under 29 U.S.C. § 1132(a)(3), Plaintiffs seek "appropriate equitable relief," including but not limited to:

a. Restitution or equitable disgorgement of HCSA funds wrongfully retained by Defendants, including at least $2,617.59 in identifiable pre-tax contributions;

b. An equitable surcharge against fiduciaries sufficient to make Plaintiffs whole for losses attributable to fiduciary breaches, to the extent recognized as an equitable remedy under ERISA;

c. Injunctive relief requiring Defendants to adopt and follow ERISA-compliant procedures and to cease misrepresenting participants' rights and account status; and

d. Declaratory relief that Defendants violated ERISA and their fiduciary duties.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally where appropriate, and award the following relief:

1. ERISA Benefits: An order under 29 U.S.C. § 1132(a)(1)(B) requiring Defendants to pay all benefits due under the terms of the Plan, including at least $2,617.59 in HCSA funds and any other benefits found due, together with pre-judgment and post-judgment interest;

2. Equitable Relief: Appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including restitution, disgorgement, surcharge, reformation or clarification of Plan terms as necessary, and injunctive and declaratory relief as described above;

3. Attorney's Fees and Costs: An award of reasonable attorney's fees and costs under 29 U.S.C. § 1132(g) and any other applicable law;

4. Interest: Pre-judgment and post-judgment interest at the maximum rate permitted by law;

5. Declaratory Relief: A declaration that Defendants' acts and omissions violated ERISA and their fiduciary duties and that their practices with respect to Plaintiffs' HCSA account were unlawful;

6. Injunctive Relief: An injunction requiring Defendants to:

a. Correct Plaintiffs' account records; b. Implement and follow ERISA-compliant claims and appeal procedures; and c. Refrain from misrepresenting the existence or status of participants' accounts; and

7. Such Other Relief: Such other and further legal and equitable relief as the Court deems just, proper, and necessary to fully remedy Defendants' violations and protect Plan participants and beneficiaries.

VIII. SIGNATURE BLOCK

Respectfully submitted this **11th** day of **December**, **2025**.

ALPEREN YAGCI

1706 Albatross Rd. Princeton, Texas 75407

6677015802

alperenyagcitr@gmail.com

ANNGI LORENA BOLANOS QUINONEZ

1706 Albatross Rd. Princeton, Texas 75407

4439368344

anngiebolanoz@gmail.com

EXHIBIT LIST

EXHIBIT A: Cigna "TAKE ACTION NOW" Letter (January 2024) – HCSA account acknowledgment and balance reminder.

EXHIBIT B: Cigna Denial Letter (February 8, 2024) – Written statement falsely asserting no HCSA/FSA/ HRA/HSA account exists.

EXHIBIT C: HCSA Portal Screenshots – Screenshots showing HCSA account, $2,617.59 balance, and transaction history. Denied Claims Screenshots – Timely claim submissions and denials.

EXHIBIT D: JPMorgan "As You Leave" Guide – Page(s) describing post-termination HCSA coverage and claim submission deadlines.

EXHIBIT E: JPMorgan Employment Verification – Documentation of Plaintiff Yagci's employment and July 9, 2023 termination date.

EXHIBIT F: Medical Invoices – Invoices, statements, or receipts showing at least $3,200.00 in out-of-pocket eligible medical expenses.

EXHIBIT G: Pay Stubs – Pay stubs showing pre-tax HCSA contributions from Plaintiff Yagci's wages.